AMERICAN HOSPITAL ASSOCIATION, a private, non-profit corporation, West Virginia Hospital Association, a private, non-profit corporation, Stonewall Jackson Memorial Hospital Company, a private, non-profit, charitable corporation, Charles Town General Hospital, a private, non-profit, charitable corporation, Sistersville General Hospital, a city hospital, Wheeling Hospital, Inc., a private, non-profit, charitable corporation, and the Catholic Health Association Of the United States, a private, non-profit corporation, Plaintiffs,

v.

L. Clark HANSBARGER, Director of the West Virginia Department of Health, Defendant.

Civ. A. No. 84–0144–C(K).

United States District Court, N.D. West Virginia.

Dec. 18, 1984.

George G. Guthrie, Charles L. Woody, Robert J. O'Neil, Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., Seymour J. Schafer, Markel, Schafer & Means, P.A., Pittsburgh, Pa., William J. Yaeger, Herndon, Morton, Herndon & Yaeger, Wheeling, W.Va., Richard L. Epstein, Robert W. McCann, Linda A. Tomaselli, Chicago, Ill., Donna D. Fraiche, Wyllie, Fraiche & Sullivan, A Professional Corp., New Orleans, La., for plaintiffs.

Chauncey H. Browning, Jr., Atty. Gen., Charleston, W.Va., for defendant.

## OPINION

KIDD, District Judge.

Jurisdiction of this Court is predicated upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that W.Va.Code § 16–5B–6a is unconstitutional and is an interference with collective bargaining rights between plaintiffs and

their employees, which is an area pre-empted by federal labor law.

Plaintiff American Hospital Association is a private, non-profit corporation organized and existing under the laws of the State of Illinois, having and maintaining its principal office and place of business in Chicago, Illinois, and having as members thereof individual non-profit and local governmental hospitals located throughout West Virginia, including plaintiffs Stonewall Jackson Memorial Hospital Company, Charles Town General Hospital, Weirton Medical Center, Inc., Sistersville General Hospital, and Wheeling Hospital, Inc. Plaintiff West Virginia Hospital Association is a private, non-profit corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business in Charleston, West Virginia, and having as members thereof individual non-profit and local governmental hospitals located throughout West Virginia, including plaintiffs Stonewall Jackson Memorial Hospital Company, Charles Town General Hospital, Weirton Medical Center, Inc., Sistersville General Hospital and Wheeling Hospital, Inc. Plaintiff Stonewall Jackson Memorial Hospital Company is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Weston, West Virginia, and owns and operates a seventy (70) bed hospital located in Weston, West Virginia. Plaintiff Charles Town General Hospital is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, ha and maintaining its principal office and place of business at Ranson, West Virginia, and owns and operates a one hundred fourteen (114) bed hospital, known as Jefferson Memorial Hospital, located in Ranson, West Virginia. Plaintiff Weirton Medical Center, Inc. is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Weirton, West Virginia, and owns and op-

erates a two hundred sixty-five (265) bed hospital located in Weirton, West Virginia. Plaintiff Sistersville General Hospital is a local governmental hospital organized and existing under the laws of the State of West Virginia and the ordinances of the City of Sistersville, having and maintaining its principal office and place of business at Sistersville, West Virginia, and owns and operates a thirty-two (32) bed hospital located in Sistersville, West Virginia. Plaintiff Wheeling Hospital, Inc., is a private, non-profit, charitable corporation organized and existing under the laws of the State of West Virginia, having and maintaining its principal office and place of business at Wheeling, West Virginia, and owns and operates a two hundred seventy-six (276) bed hospital located in Wheeling, West Virginia. Plaintiff The Catholic Health Association of the United States is a private, non-profit corporation organized and existing under the laws of the State of Missouri, having and maintaining its principal office and place of business in St. Louis, Missouri, and having as members thereof religious institutes, more commonly referred to as religious orders of nuns, which own, operate and sponsor certain non-profit hospitals located throughout West Virginia and which appoint the respective directors of said hospitals. Defendant L. Clark Hansbarger is the Director of the West Virginia Department of Health and in such capacity is one of the individuals who may enforce the provisions of W.Va.Code § 16–5B–6a.

The plaintiffs, American Hospital Association, et al., filed this civil action on June 25, 1984, seeking declaratory and injunctive relief against the State of West Virginia and the Commissioner of Health, L. Clark Hansbarger. The complaint seeks a judgment declaring W.Va.Code § 16–5B–6a (hereinafter "the Act") unconstitutional. Plaintiffs also seek injunctive relief prohibiting the defendant from enforcing the Act. Defendant answered, *inter alia*, that the Act is not unconstitutional and therefore plaintiffs should be denied all relief.

A hearing was conducted on plaintiffs' motion for a temporary restraining order on June 24, 1984. On June 26, 1984, the Court by memorandum opinion denied plaintiffs' motion for a temporary restraining order. On July 16 and 17, 1984, the parties appeared before the Court for argument on plaintiffs' motion for a preliminary injunction. On July 24, 1984, the Court entered its order directing the parties to file their findings of fact and memoranda of law on or before July 20, 1984, and any reply brief on or before August 6, 1984. On September 20, 1984, the Court entered its opinion and order denying plaintiffs' motion for a preliminary injunction. On November 8, 1984, the Court entered its order, pursuant to stipulation of the parties, consolidating the trial of this action with the previous hearing on plaintiffs' motion for a preliminary injunction; that the motions and memoranda filed in connection with the plaintiffs' motion for a preliminary injunction be and the same hereby are submitted for the trial of this action, and that no further briefs, witnesses, or evidence be submitted in connection with the trial of this action.

This matter has been fully briefed and has been submitted to the Court for decision.

Plaintiffs challenge the Act on several grounds: (1) that the Act violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) that the Act violates the Freedom of Association guaranteed to the Sisters of the Pallottine Missionary Society by the First and Fourteenth Amendments of the United States Constitution; (3) that W.Va. Code 16–5B–6a is pre-empted by the Federal Labor Laws; (4) that the Act violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (5) that the Act violates Section 1, Article XI of the West Virginia Constitution; (6) that the Act violates Section 4, Article XI of the West Virginia Constitution; and (7) that the Act violates the Contracts Clause of the United States Constitution. The Court will address the issues in the order just stated.

W.Va.Code § 16–5B–6a requires that on or before July 1, 1984, at least forty percent (40%) of the board of directors of all non-profit and local governmental hospitals located in West Virginia must be composed of an equal proportion of "consumer representatives" from "[s]mall businesses, organized labor, elderly persons, and persons whose income is less than the national median income" and that "[s]pecial consideration shall be made to select women, racial minorities and handicapped persons" for such positions and authorizes defendant Hansbarger and private citizens to enforce its provisions. The entire text of W.Va. Code 16–5B–6a is as follows:

(a) The legislature declares that a crisis in health care costs exists, and that one important approach to deal with this crisis is to have widespread citizen participation in hospital decision-making, and that many hospitals in West Virginia exclude from their boards important categories of consumers, including small businesses, organized labor, elderly persons and lower-income consumers. The legislature further declares that non-profit hospitals receive such major revenue from public sources and are so crucial in health planning and development that it is necessary to require consumer representatives on their boards of directors. Therefore, the legislature determines that non-profit hospitals and hospitals owned by local governments should have boards of directors representative of the communities they serve.

(b) As used in this section, "applicable hospitals" means all non-profit hospitals and all hospitals owned by a county, city or other political subdivision of the State of West Virginia.

(c) At least 40 percent of the boards of directors of applicable hospitals shall, on or before the first day of July, 1984, be composed of an equal proportion of consumer representatives from each of the following four categories: Small businesses, organized labor, elderly persons and persons whose income is less than the national median income. Special consideration shall be made to select women, racial minorities and handicapped persons.

(d) The provisions of this section may be enforced by the director of health, or by any citizen of the county wherein any offending hospital is located, by the filing of an action at law in the circuit court of such county.[1]

■ West Virginia Code 16–5B–6a is enforceable by injunction obtained in an action at law as set forth by W.Va.Code 16–5B–6a(d) above. Plaintiffs further argue that W.Va.Code 16–5B–6a may be enforced pursuant to W.Va.Code 16–5B–6a(d) which provides:

The provisions of this section may be enforced by the director of health, or by any citizen of the county wherein any offending hospital is located, by the filing of an action at law in the circuit court of such county.

The defendants argue that W.Va.Code 16–5B–11 does not apply and that the exclusive remedy for violation of W.Va.Code 16–5B is by W.Va.Code 16–5B–6a(d).

■ It is clear that the Legislature's intent was to give the Director of Health or any citizen of such county the authority to seek injunctive relief against any offending hospital for violation of this section. Further, there is no conflict between W.Va. Code § 16–5B–6a(d) and W.Va.Code § 16–5B–11 and W.Va.Code § 16–5B–6(1). W.Va.Code § 16–5B–11 provides that any person, association, corporation, or local governmental agency violating W.Va.Code § 16–5B–6a shall be fined up to five hundred dollars ($500) or imprisoned for up to ninety (90) days or both. W.Va.Code § 16–5B–6(1) authorizes defendant Hansbarger in his capacity as Director of the West Virginia Department of Health to

---

**1.** During the 1984 regular session of the West Virginia Legislature, separate bills were introduced in the House of Delegates (H.B. 1805) and the Senate (Senate Bill No. 556) to repeal Section 6a of Article 5B in its entirety, which bills were unsuccessful, thereby leaving intact its effective date of July 1, 1984.

suspend or revoke the license of a non-profit or local governmental hospital for violation of W.Va.Code § 16–5B–6a. Testimony reveals that no administrative rules and regulations have been promulgated to implement, administer or interpret W.Va. Code § 16–5B–6a.

## I. EQUAL PROTECTION CLAUSE

Plaintiff alleges in Count One of its complaint that the Act is unconstitutional because it does not apply uniformly with respect to the class of all non-profit corporations in the State of West Virginia, more specifically being limited in its applicability by its terms to all non-profit corporations owning and operating hospitals in the State of West Virginia, and the classification attempted by such statute bears no rational relationship to any legitimate interest of the State of West Virginia. This claim is based upon the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Section 1, Article XI of the Constitution of West Virginia. The Fourteenth Amendment of the United States Constitution provides, in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Plaintiffs argue that the Act employs a classification of non-profit and local governmental hospitals on one hand and for-profit and state owned hospitals on the other hand in order to achieve its stated purpose of dealing with health care costs. Further, the plaintiffs argue that such classification bears upon the members of the Sisters of the Pallottine Missionary Society's fundamental right of Freedom of Association.

The Act declares that "a crisis in health care costs exists, that one important approach to deal with this crisis is to have widespread participation in hospital decision making ..." Under the Act, at least forty percent (40%) of boards of directors of all non-profit and local governmental hospitals located in West Virginia must be composed of an equal proportion of consumer representatives from small business, organized labor, elderly persons, and persons whose income is less than the national median income. The Act also provides that special consideration must be given to women, racial minorities, and handicapped persons. The legislature enacted W.Va. Code § 16–5B–6a with the goal of curbing the rising costs of health care within the state by giving greater citizen participation in hospital decision making. It is the hope and intent of the Legislature that greater citizen participation on the boards of non-profit and local government supported hospitals will result in greater scrutiny over the cost of health care in the state. Since the Act does not apply to profit and state owned hospitals, as opposed to non-profit and local government hospitals, the Court must determine if the classifications in the Act are reasonable in light of the Act's purpose. In *Eisenstadt v. Baird,* 405 U.S. 438, 446, 92 S.Ct. 1029, 1034, 31 L.Ed.2d 349, the United States Supreme Court referred to *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–254, 30 L.Ed.2d 225 (1972), which held:

> In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. *Barbier v. Connolly,* 113 U.S. 27 [5 S.Ct. 357, 28 L.Ed. 923] (1885); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61 [31 S.Ct. 337, 55 L.Ed. 369] (1911); *Railway Express Agency v. New York,* 336 U.S. 106 [69 S.Ct. 463, 93 L.Ed. 533] (1949); *McDonald v. Board of Election Commissioners,* 394 U.S. 802 [89 S.Ct. 1404, 22 L.Ed.2d 739] (1969). The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be

reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989] (1920).

■ The Court, in equal protection analysis, must look to the classification or interest involved. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Whenever a state act is being challenged as violative of the Equal Protection Clause, the Court must look to one of two constitutional tests. If the legislation creates a suspect classification or impinges upon a fundamental right based upon inherently suspect criteria, then the proper standard of review is strict scrutiny. There must be some showing of a compelling state interest and that the means chosen to achieve that purpose is the least restrictive alternative to meet the standards of strict scrutiny. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1972). If no suspect classification exists, or there is no infringement of a fundamental right, then the appropriate standard is the rational basis test. Under the rational basis standard there must be some showing that the classification is rationally related to a legitimate state purpose. *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

■ Plaintiffs have a heavy burden. Clearly W.Va.Code 16–5B–6a is an economic regulation. Indeed, the purpose set forth in the Act states specifically that the Legislature's intent in passing such legislation is to attempt to control the rising costs of health care. *See Pollard v. Cockrell*, 578 F.2d 1002, 1012 (5th Cir.1978); *See also Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959) and *West Virginia Manufacturers Association v. United Steelworkers of America, et al*, 714 F.2d 308 (4th Cir.1983). The Court declines to declare that W.Va.Code 16–5B–6a is an impingement so fundamental that

it justifies the protections of strict judicial scrutiny.

■ In applying W.Va.Code 16–5B–6a, the West Virginia Legislature distinguished between making the Act applicable to non-profit and local government hospitals and not applying the Act to profit and state owned hospitals. Local government hospitals receive their appropriations from political subdivisions of the state. Non-profit hospitals receive a favorable tax status which is clearly a benefit. Indeed, the recognition as a non-profit organization under the tax laws is an indirect grant of public monies or considered as an indirect donation by the public at large:

When the Government grants exemptions or allows deductions all taxpayers are effected; the very fact of the exemption or deduction for the donor means that other taxpayers can be said to be indirect and vicarious "donors". Charitable exemptions are justified on the basis that the exempt entity confers a public benefit—a benefit which the society or the community may not itself choose or be able to provide or which supplements and advances the work of public institutions already supported by tax revenues....

*Bob Jones University v. United States*, 461 U.S. 574, 591, 103 S.Ct. 2017, 2028, 76 L.Ed.2d 157 (1983). There is recognition that organizations are entitled to preferential treatment and tax benefits because they provide a benefit to society. *Bob Jones University v. United States, supra.* Clearly, non-profit hospitals are conferred an advantageous benefit which for-profit hospitals do not receive. Further, W.Va. Code 16–5B–6a does not apply to state hospitals because state hospitals are governed by the director of health and the state rather than a board of directors.

Courts have traditionally exercised judicial restraint to legislative judgment regarding public purpose or purposes based upon the general good. The Court has given great deference to the Legislature's judgment and finds that the Legislature's enactment of W.Va.Code 16–5B–6a has a

rational basis. "The Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970).

### Freedom of Association

The next issue is whether W.Va.Code 16–5B–6a violates the right of association guaranteed to the Sisters of the Pallottine Missionary Society by the First and Fourteenth Amendments of the United States Constitution. The plaintiff, Pallottine Missionary Society, is a religious society of the Roman Catholic Church and is organized as a corporation under the laws of West Virginia. The Pallottine Missionary Society, hereinafter referred to as "the Society", owns and operates St. Joseph's Hospital, in Buckhannon, West Virginia. The Society argues that the Act requiring consumer representation on the boards of non-profit hospitals infringes upon their First Amendment right of Freedom of Association.

■ The Society is a corporation with a board of governors and provincial council which oversees its operations. St. Joseph's Hospital is not a separate corporation from the Society but is property of the Society and subject to control of the provincial council. However, St. Joseph's Hospital does have its own local board of directors whose members are appointed by the provincial council. The provincial council, composed only of Sisters of the Society, retains the power to approve or disapprove all major actions of the local board. The by-laws of St. Joseph's Hospital local board of directors requires that at least seventy percent (70%) of the local board be members of the Society of Sisters. The Society argues that they are uncertain whether W.Va.Code 16–5B–6a requires consumer representatives on its provincial council or on the local board of St. Joseph's Hospital, or both.

The Act provides that consumer representatives be placed upon "the boards of directors of applicable hospitals." Clearly, the goal is to give greater access and input into the decision making process of hospital boards in hopes of curbing the rising costs of health care. The Sisters of the Pallottine Missionary Society is a religious order of nuns of the Roman Catholic Faith whose purpose is to foster the ideals and beliefs of the Roman Catholic Faith. While the Society may have title and possession over certain hospitals, their primary purpose is the fostering of religious principles protected by the First Amendment. Indeed, the operation of a hospital would seem to be secondary to their religious obligations though the two are very compatible. It is difficult for this Court to believe that the Legislature intended to require consumer representatives on the board of directors of religious orders. The constitutionality of such legislation would be very questionable. Looking to the purpose and the plain language of the Act it appears to the Court that the Act would only require consumer representatives on the local board of directors of the hospital and the Act would not be applicable to the religious society or its governing board.

■ In *Roberts v. United States Jaycees*, —— U.S. ——, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Court held that:

> ... we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

However, the court recognized that the right to associate is not absolute:

> The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas that cannot be achieved through means significantly less restrictive of associational freedoms.

*Roberts v. United States Jaycees, supra.* In the Jaycees case the issue concerns discriminatory policies regarding membership

in a young men's civic and service organization. In the present instance the issue concerns the membership of a non-profit hospital board operated by a religious order rather than membership in the religious order or its governing body. The plaintiffs entered an area which is highly regulated and were aware of the regulatory system when they entered the health services area. Further, the main purpose for operating a hospital is to provide health care. While the operation of a hospital and the right to exercise one's religious beliefs or vocation may be compatible, the primary purpose of operating a hospital is to provide health services to the public. The Act does not require Catholic hospitals to alter their creed or beliefs, nor does it prevent them from excluding individuals with ideologies or philosophies different from those of its existing members. *Roberts v. United States Jaycees, ibid.* Indeed, testimony revealed that the plaintiffs do not exclude members of the categories set forth in the Act and that some board members of Catholic Hospitals qualify in at least one or more categories set forth in the statute. Testimony of Sister Mary Diane Bushee revealed that St. Joseph's Hospital had developed a plan to comply with the Act but had not implemented such plan because of the pending litigation. (Tr. 248)

The Court recognizes a difference between the First Amendment right of a religious society to associate for the advancement of its beliefs and ideas and the operation of a hospital. Clearly, the operation of a hospital, pursuant to the corporate laws of the state, is not essential to the expression or advocacy of one's religious beliefs.

### Labor Law Pre-emption

■ The plaintiffs argue that the Act is pre-empted by federal labor laws. The United States Supreme Court described the doctrine of pre-emption as it applies to the Labor Management Relations Act in *Belknap, Inc. v. Hale,* 463 U.S. 591, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983).

Our cases have announced two doctrines for determining whether state regulations or causes of action are preempted by the NLRA. Under the first, set out in *San Diego Building Trades Council v. Garmen,* 359 US 236, 3 L Ed 2d 775, 79 S Ct 773 (1959), state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act. Id., at 245, 3 L Ed 2d 775, 79 S Ct 773. The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. In such cases, the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the Board's ability to adjudicate the controversies committed to it by the Act ... and the risk that the state will sanction conduct that the Act protects. The second preemption doctrine, set out in *Machinists v Wisconsin Employment Relations Commission,* 427 US 132, 49 L Ed 2d 396, 96 S Ct 2548 (1976), proscribes state regulation and state-law causes of actions concerning conduct that Congress intended to be left unregulated ....

The plaintiffs argue that the Act's requirement of a labor representative on a hospital board of directors would disturb the balance of power between labor and management. Some of the plaintiff hospitals recognize certain unions as bargaining representatives for their employees. Therefore, the plaintiffs contend that any board member who is also a member of the hospital union would have a conflict of interest. Further, that such a board member (union representative) would have access to confidential financial information and strategy of the board. Plaintiffs point to the conflicting fiduciary duties a board member has to the hospital and to a labor organization. They also point out that a labor member could be fined, be expelled from his labor union, or have his/her retirement benefits jeopardized by not supporting labor's position.

The Court finds that Garmen pre-emption is not applicable to the Act. The Act fails to interfere with the employer and employee relationship protected by the National Labor Relations Act.

The Act provides that consumer representatives be selected on an equal proportion from four categories, one of which is organized labor. It does not require that such labor representative be affiliated with the hospital's bargaining unit to serve on the board of directors. Such labor representative could be selected from a labor organization which has no affiliation with the hospital. However, even in those instances where the labor representative on the board of directors is a member of this labor organization which represents the hospital's bargaining unit, there would not be a conflict under 29 U.S.C. 158(a) and thus no case for pre-emption under the Belknap standards. *Belknap, Inc. v. Hale,* 463 U.S. 591, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983).

On Page 3 of their memoranda of law (June 15, 1984), the plaintiffs cite *Anchorage Community Hospital, Inc.,* 225 NLRB 575 (1976), wherein the National Labor Relations Board held that there was no immediate danger of a conflict of interest in violation of 18(a)(2) where members of the teamsters union held positions on the hospital's board of trustees and executive committee. The plaintiffs attempt to distinguish between *Anchorage* and the present matter by arguing that the former was a voluntary association while the latter is a mandatory one. It would seem to make little difference whether labor representation was voluntary or mandatory since the crux of the issue is whether a conflict exists by a labor representative sitting on an employer's board of directors.

There is always a potential for conflict of interest with anyone who serves on the board of any corporation. There may be businessmen or vendors who do business with a hospital and who may also serve the hospital board. Like any board member who has a conflict, a labor representative sitting on a board of directors should stand aside when issues are taken up regarding his/her labor organization. Further, where a board member, whether a labor member or businessman, is placed in a position of a possible conflict of interest and breach of fiduciary responsibility then that board member should withdraw from the decision making process on that issue. The Court is of the opinion that this issue is not pre-empted by federal labor laws.

*Due Process Clause*

The plaintiffs argue that the Act is (1) unreasonable, arbitrary and capricious because it bears no real relationship to hospital cost containment control; (2) unreasonably and arbitrarily restricts the ability of hospitals to discharge their legal responsibility to quality as well as cost efficient health care; and (3) takes the Sisters of the Pallottine Missionary Society's property without compensation; and (4) is vague, ambiguous, and overbroad. The Court will address these issues in the order presented.

■ Plaintiffs argue that the Act has no relationship to the containment of hospital costs. The Legislature passed this Act in hopes of curbing rising hospital costs. Certainly, there is a rational relationship between the operation of a hospital and its board of directors. In fact, the board of directors establish the policy and guidelines which ultimately determine the cost and quality of services to be provided by a hospital. The Legislature apparently was of the opinion that placing consumer representatives on hospital boards would allow the consumer a greater input into the overall operation of hospitals and ultimately result in closer scrutiny of financial operations. The Court gives great deference to the Legislature in this matter and is of the opinion that there is a relationship between the composition of hospital boards and the containment of hospital costs. The Court is of the opinion that it should not infringe upon the powers of the Legislature.

■ The next issue concerns whether the Act restricts the ability of hospitals to maintain effective governance and to dis-

charge their legal responsibility to qualify as well as cost efficient health care. Plaintiffs contend that the Act's establishment of specified percentages for consumer representation on hospital boards without regard to qualification and commitment regarding the discharge of their duties constitutes an arbitrary and unreasonable restriction in violation of the Due Process Clause of the Fourteenth Amendment. There is no reason to believe that the average consumer is not qualified to serve as a hospital board member. The ultimate decision regarding the selection of individuals to serve on hospital boards rests solely upon the hospital itself. When selecting board members the hospital may continue to use the criteria and standards for selection of board members as it has done in the past. The only difference is that the hospital must now be sensitive to the four categories set forth in the Act. Certainly, there are individuals within those categories who would make excellent board members. In fact, testimony revealed that some members who are presently serving on hospital boards would come within one or more of the four categories set forth in the Act. The ultimate responsibility lies, as it has in the past, with the hospital to recruit and select only those individuals who would make good board members. For these reasons, the Court is of the opinion that this issue is without merit.

The plaintiffs have also raised the question of whether there is a taking of property without compensation. It is argued that there is a taking of the Sisters of the Pallottine Missionary Society's property without compensation and therefore in violation of the Due Process Clause of the Fourteenth Amendment.

The Fourteenth Amendment of the United States Constitution provides that no person shall be deprived of his property without due process of law. However, it has been held that every governmental regulation of uses of private property was not a taking for public use. *Miller v. Schoene,* 276 U.S. 272, 277–80, 48 S.Ct. 246, 246–48, 72 L.Ed. 568 (1928). In *Troy Ltd. v. Ren-*

*na,* 727 F.2d 287, 302 (3rd Cir.1984), it was held that "regulations of the use of private property frequently involve costs to the owner. They are nevertheless not deemed to be takings." Where there is a common exercise of regulatory power then courts have tended to sustain government action. *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 592–94, 82 S.Ct. 987, 988–990, 8 L.Ed.2d 130 (1962). In *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922), the court held that:

> [G]overnment regulation—by definition—involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by *purchase.* "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law."

The court went on to indicate that "the greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power." *Pennsylvania Coal Co. v. Mahon, supra.* A taking occurs in the ordinary sense when government controls a person's use of property so tightly that, although some uses remain to the owner, the property's value has been virtually destroyed. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413–14, 43 S.Ct. 158, 159–60, 67 L.Ed. 322 (1922). *See also Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). In *Penn Central Transportation Company v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the court set forth guidelines on determining when a taking has occurred:

> In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The eco-

nomic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. ... So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government ... than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

■ The Act establishes certain guidelines or regulations for the common good in the hopes of containing health care costs. The regulated hospitals are either directly supported by the state or indirectly supported through certain tax exemptions. Irregardless of the method of financial support, non-profit and local government hospitals receive such benefits because of their commitment to public service. Clearly, the state has not appropriated or taken governing control of these hospitals. Hospitals, and the health field in general, have been a highly regulated field. The plaintiffs were aware of that fact when they entered the hospital business. The Act challenged here is a method or attempt to regulate hospital costs.

### Void for Vagueness

■ It has been alleged that the Act violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution because it is vague, ambiguous, and overbroad. As the Court has already stated, the Act is intended to regulate health care costs and as such is an economic regulation. Under due process a law is void if it is so vague that individuals "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Such indefiniteness violates due process when it fails to give individuals fair notice. *Papachristou v. City of Jacksonville*, 405 U.S. 156,

162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

■ The Act provides for four categories: small business, organized labor, elderly persons, and persons whose income is less than the national median income. Further, special consideration is to be given to women, racial minorities, and handicapped persons. Each of these terms have a common interpretation or meaning regarding which individuals would fit each category. Testimony of Bruce Carter indicated he had no problem determining who is a small business person (Tr. 278) and Sister Mary Diane Bushee had no problems with organized labor, elderly, or persons below the median income (Tr. 243). In fact, testimony revealed that certain members presently serving on hospital boards would come within these categories. Sister Bushee even testified that St. Joseph's had a contingency plan which she had reason to believe would comply with the Act. (Tr. 254) Based upon these facts the Court finds no basis for the plaintiffs' argument that the Act is vague, ambiguous, and overbroad.

### Article XI of West Virginia Constitution

■ Plaintiffs contend that the Act violates Sections One and Four of the West Virginia Constitution. Section 1, Article XI provides:

The legislature shall provide for the organization of all corporations hereafter to be created, by general laws, uniform as to the class to which they relate; but no corporation shall be created by special law: Provided, that nothing in this section contained, shall prevent the legislature from providing by special laws for the connection, by canal, of the waters of the Chesapeake with the Ohio river by line of the James river, Greenbrier, New river and Great Kanawha.

Plaintiffs argue that the Act imposes upon non-profit hospitals special requirements which are not uniformly applicable upon all non-profit corporations. The plaintiffs are attempting to argue that the Legislature, in passing W.Va.Code 16–5B–6a, unfairly

singled them out for different treatment. Article XI of the West Virginia Constitution does not prevent the Legislature from passing laws which regulate specialized areas of business conducted by various corporations. To argue that the Legislature may not pass legislation regulating activities of certain corporations without making such regulations uniformly apply to all members of a certain class of corporations is beyond imagination. Article XI Section 1 of the West Virginia Constitution only requires uniform laws regarding the creation and incorporation of certain classes of corporation, i.e.: non-profit, profit, et cetera.

Article XI, Section 4, of the West Virginia Constitution provides:

.... The legislature shall provide by law that every corporation, other than a banking institution, shall have power to issue one or more classes and series within classes of stock, with or without par value, with full, limited or no voting powers, and with preferences and special rights and qualifications, and that in all elections for directors or managers of incorporated companies, every stockholder holding stock having the right to vote for directors, shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock, shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner.

The Act does not prevent the "stockholders", Sisters of Pallottine Missionary Society, from selecting or voting for individuals they feel are capable and qualified to serve as directors. Stockholders need only to consider the four categories set forth in the Act when selecting directors but may otherwise be discriminate in choosing individuals they wish to serve on such boards.

## Contracts Clause

The Contracts Clause of the United States Constitution provides that "no state shall ... pass any ... law impairing the obligations of contracts." A charter of a private corporation is a contract and entitled to protection under the Contracts Clause. *Dartmouth College v. Woodward*, 4 Wheat (17 U.S.) 518, 4 L.Ed. 629 (1819). It has been further held that articles of incorporation organized and incorporated under the general laws of a state constitute a contract between the corporation and state. *Stanislaus County v. San Joaquin and Kings River Canal*, 192 U.S. 201, 24 S.Ct. 241, 48 L.Ed. 406 (1904). However, a legislature may, without impairing contractual obligations, impose new burdens upon corporations in addition to those contained in the charger, which are in the public interest and safety. *Union Bridge Co. v. U.S.*, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523 (1907). Legislation which in effect only regulates the manner in which the franchises of a corporation are to be exercised and that do not interfere substantially with the object of the grant conferred by its charter do not impair the contract. *Pearsall v. Great Northern Railroad Co.*, 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838 (1896).

The Court in determining whether the Act is in conflict with the contracts clause must determine whether the law has worked a substantial impairment of the contractual relationship. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). In determining whether a state law seriously impairs the contract the Court must look to the nature of the business or industry.

In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past. *Allied Structural Steel Co. [v. Spannaus]*, 438 U.S. [234], at 242, n. 13, 98 S.Ct. [2716], at 2721, n. 13 [57 L.Ed.2d 727 (1978)], citing *Veix v. Sixth Ward*

*Bldg. & Loan Ass'n,* 310 U.S. 32, 38, 60 S.Ct. 792, 794–795, 84 L.Ed. 1061 (1940) ("When he purchased into an enterprise already regulated in the particular to which he now objects; he purchased subject to further legislation upon the same topic"). The Court long ago observed: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Hudson Water Co. v. McCarter,* 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908)." *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 705.

Clearly, the health care industry is a highly regulated field and the plaintiffs were aware of that fact when they chose to enter the hospital business. Further, the Act does not prevent the stockholders from selecting those individuals they prefer as hospital board members. The Act only provides that in selecting such board members they be sensitive to select members who may represent certain areas. The hospitals covered by the Act are charitable organizations who operate to serve the public and receive certain tax advantages.

### Conclusion

Functionally speaking, in the matters here addressed, we are speaking of power. The power but not the wisdom of the legislature. The power and the right of this Court to address the constitutional questions presented.

The police power of the state is vested solely in the legislature. The same is limited only by state and federal constitutional strictures. Such were not found.

And while the Court had the power to effect judicial strictures as contended, it had no such right. In such instances, judicial restraint is dictated.

On the basis of the testimony adduced at the hearing on plaintiffs' "Motion for Preliminary Injunction", the parties respective memorandums of law and reply, the Court finds that W.Va.Code 16–5B–6a does not violate the Constitution of the United States and the Constitution of the State of West Virginia.

Judgment shall be accordingly OR-DERED.