## MILLER ET AL. *v.* SCHOENE.

ERROR TO THE SUPREME COURT OF APPEALS OF VIRGINIA.

No. 199.   Argued January 20, 1928.—Decided February 20, 1928.

1. An Act of Virginia provides, compulsorily, for the cutting down of red cedar trees within two miles of any apple orchard when found upon official investigation to be the source or "host plant" of the communicable plant disease called cedar rust and to "constitute a menace to the health of any apple orchard in said locality" The owner is allowed a judicial review of the order of the State Entomologist directing such cutting, and may use the trees when cut, but no compensation is allowed him for their value standing or for decrease in market value of the realty caused by their destruction. The evidence shows that the life cycle of the parasite has two phases, passed alternately on the cedar and the apple; that it is without effect on the value of the cedar, but destructive of the leaves and fruit of the apple; that it is communicable by spores from the cedar to the apple over a radius of at least two miles; that the only practicable method of controlling it is destruction of all red cedar trees within that distance of apple orchards; and that the economic value of cedars in Virginia is small as compared with that of the apple orchards.

   *Held,* that the Act is consistent with the Due Process Clause of the Fourteenth Amendment.   P. 277.

2. When forced to make the choice, the State does not exceed its constitutional powers by deciding upon the destruction of one class of property in order to save another which, in the judgment of the legislature, is of greater value to the public.   P. 279.

3. Preferment of the public interest, even to the extent of destroying property interests of the individual, is one of the distinguishing characteristics of every exercise of the police power which affects property.   P. 280.

4. The provision of the statute that the investigation of the locality shall be made upon the request of ten or more reputable freeholders of the county or magisterial district does not make it objectionable as subjecting private property to arbitrary or irresponsible action of private citizens, since the decision whether the facts revealed bring the case within the statute is made by the State Entomologist and subject to judicial review. *Eubank* v. *Richmond*, 226 U. S. 137, distinguished. P. 280.

5. Since no penalty can be incurred or disadvantage suffered under the statute in advance of the judicial ascertainment of its applicability, and since it was held applicable in this case by the state court, the objection to its vagueness is without weight. P. 281.

146 Va. 175, affirmed.

ERROR to a judgment of the Supreme Court of Appeals of Virginia, which affirmed a judgment affirming on appeal an order of the State Entomologist, Schoene, requiring the plaintiffs to cut down a large number of ornamental red cedar trees growing on their property. The judgment allowed them $100 to cover the expense of removing the cedars.

*Mr. Randolph Harrison,* with whom *Messrs. C. W. Bennick* and *D. O. Dechert* were on the brief, for plaintiffs in error.

The statute is invalid in that it provides for the taking of private property, not for public use, but for the benefit of other private persons. *Buchanan* v. *Worley,* 245 U. S. 74.

The enforcement of this law against plaintiffs in error, involving the destruction of all the red cedar trees on their land, would result in the taking of property values of considerable magnitude—not less than five to seven thousand dollars as they offered to prove.

We submit that the case is in no wise controlled by the decisions cited in *Bowman* v. *Entomologist,* 128 Va. 351, in which statutes have been held valid which pro-

318°—28——18

vided for the destruction, as nuisances, of noxious weeds
(never of any value for any purpose); or of fruit trees in-
fected with San José scale; or of peach trees affected by
the "yellows"; or of apple trees infected with fruit scab,
or of oranges affected by "citrus canker,"—in all of
which instances the disease was one so affecting the trees
to be destroyed that their value as property was utterly
annihilated, and whose destruction, therefore, in order
to preserve healthy trees, could in no proper sense be re-
garded as a taking of property. Such trees, so diseased,
become of course, from the standpoint of value, of the
same class as noxious weeds, and within the *de minimis*
doctrine.

But in the case at bar, the cedar trees are not them-
selves injured in the slightest degree as a result of their
becoming hosts of the cedar rust. Nor is their contribu-
tion to the market value of the land on which they grow
at all diminished thereby.

It seems a wholly untenable view that of two species
of valuable property, one may be selected for destruction
for the protection of the other from the effects of a dis-
ease for whose existence and continuance they are inter-
changeably responsible.

In no case can property be taken for private use; and
the taking of private property for *public* use without due
process of law and proper compensation cannot be justi-
fied under the guise of the exercise of the police power.
*Lochner* v. *New York*, 198 U. S. 45; *Dobbins* v. *Los An-
geles*, 195 U. S. 233; *Mehlos* v. *Milwaukee* (Wis.), 146
N. W. 884; *Penna. Coal Co.* v. *Mahon*, 260 U. S. 393.

Neither the public health, the public safety, nor the
public morals or general welfare will be benefited or
promoted in any degree by the statute in question. The
alleged injury to the apple orchardist "will not justify
his shifting the damage to his neighbor's shoulders."
*Penna. Coal Co.* v. *Mahon*, 260 U. S. 393.

We submit that there is not, in the American theory of government, any room for the view that one man's property may be taken or destroyed, either directly by eminent domain or indirectly, under the guise of taxation, or of the police power, in order to enhance the property values or the financial prosperity of another. The statute prescribes no means whereby the relative proportions or values of the growths of cedar trees to be destroyed in a particular case, and of the growths of the apple trees sought to be protected thereby, shall be measured. It is not even required that the entomologist or the court shall be of the opinion that the orchards. for whose benefit the destruction of the cedar owner's property is required, as compared with the cedars, are of any considerable value; that they shall be sufficient in extent or value to be deemed commercially important; or that, in any way, they shall be shown capable of any material contribution to the general prosperity of the State or of the community in which they exist—even indirectly by adding to the values of its industries or contributing to its aggregate wealth.

If it be assumed that the orchard industry of the section at large from which the case comes is one of considerable profit, that profit redounds to the benefit, not of the State or any of its political sub-divisions nor of any public activity, but of the private owners of the orchards. If it can be said that their prosperity is a part of the general prosperity, the same is true of every profit gaining enterprise in which citizens engage, and if the police power extends to the promotion of the welfare of orchard owners, by means of the taking or destruction of valuable private property, it would seem clear that any of the other industrial or profit-making enterprises of a portion of the people may be likewise so promoted. Upon such a view the property destroying capacity of the " police power." would be absolutely limitless, and the constitu-

tional protection of property rights but hollow mockery. *Kaukauna etc. Co.* v. *Green Bay Co.,* 142 U. S. 273; *Ambler Realty Co.* v. *Village of Euclid,* 297 Fed. 307.

Control of property of plaintiffs in error is exercised under the statute by other owners of property. *Eubank* v. *Richmond,* 226 U. S. 137; *Fortune* v. *Braswell (Ga.),* 77 S. E. 819; *Cleveland Ry Co.* v. *People (Ill.),* 72 N. E. 725; *Noel* v. *People (Ill.),* 58 N. E. 616; *Railway Co.* v. *Todd (Ky.),* 5 S. W. 56; *Morton* v. *Holes (N. D.),* 115 N. W. 256; *Kelleher* v. *Schoene,* 14 F. (2d) 341.

The Virginia Court has itself declared, in *Bowman* v. *Entomologist,* 128 Va. 351, that the red cedar trees denounced by the Cedar Rust statute are not nuisances at common law.

The statute is void for vagueness and uncertainty. It contains no criterion whatever by which to determine who are the freeholders of the locality to whom is confided the power of invoking the axe of the Entomologist. Again, what is the "locality" intended by the statute? No technical meaning attaches to the term. *Connally* v. *General Construction Co.,* 269 U. S. 383.

The Virginia Court, in its opinion, has placed two interpretations on the term "locality" so opposed to each other, that it would seem that the matter is still open for determination by this Court.

But if it be held that the term "locality" is sufficiently definite, what is to be said of the term "orchard," or "orchards." How many apple trees must be grouped together to constitute an "orchard"?

The statute, as construed is plainly contrary to the first clause of the Fourteenth Amendment, *Chicago etc., R. R.* v. *Illinois,* 200 U. S. 592; *Pierce et al.* v. *The Society of Sisters,* 268 U. S. 510.

*Mr. F. S. Tavenner,* with whom *Mr. John R. Saunders, Attorney General of Virginia,* was on the brief, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the Court.

Acting under the Cedar Rust Act of Virginia, Va. Acts 1914, c. 36, as amended by Va. Acts 1920, c. 260, now embodied in Va. Code (1924) as §§ 885 to 893, defendant in error, the state entomologist, ordered the plaintiffs in error to cut down a large number of ornamental red cedar trees growing on their property, as a means of preventing the communicatión of a rust or plant disease with which they were infected to the apple orchards in the vicinity. The plaintiffs in error appealed from the order to the Circuit Court of Shenandoah county which, after a hearing and a consideration of evidence, affirmed the order and allow̦ed to plaintiffs in error $100 to cover the expense of removal of the cedars. Neither the judgment of the court nor the statute as interpreted allows compensation for the value of the standing cedars or the decrease in the market value of the realty caused by their destruction whether considered as ornamental trees or otherwise. But they save to plaintiffs in error the privilege of using the trees when felled. On appeal the Supreme Court of Appeals of Virginia affirmed the judgment. *Miller* v. *State Entomologist,* 146 Va. 175. Both in the Circuit Court and the Supreme Court of Appeals plaintiffs in error challenged the constitutionality of the statute under the due process clause of the Fourteenth Amendment and the case is properly here on writ of error. Jud. Code § 237(a).

The Virginia statute presents a comprehensive scheme for the condemnation and destruction of red cedar trees infected by cedar rust. By § 1 it is declared to be unlawful for any person to " own, plant or keep alive and standing " on his premises any red cedar tree which is or may be the source or "host plant" of the communicable plant disease known as cedar rust, and any such tree growing within a certain radius of any apple orchard is declared to be a public nuisance, subject to destruction. Section 2 makes it the duty of the state entomologist, " upon the

request in writing of ten or more reputable free-holders
of any county or magisterial district, to make a prelim-
inary investigation of the locality . . . to ascertain
if any cedar tree or trees . . . are the source of,
harbor or constitute the host plant for the said disease
. . . and constitute a menace to the health of any
apple orchard in said locality, and that said cedar tree
or trees exist within a radius of two miles of an apple
orchard in said locality." If affirmative findings are so
made, he is required to direct the owner in writing to
destroy the trees and, in his notice, to furnish a statement
of the "fact found to exist whereby it is deemed necessary
or proper to destroy" the trees and to call attention to
the law under which it is proposed to destroy them. Sec-
tion 5 authorizes the state entomologist to destroy the
trees if the owner, after being notified, fails to do so.
Section 7 furnishes a mode of appealing from the order
of the entomologist to the circuit court of the county,
which is authorized to "hear the objections" and "pass
upon all questions involved," the procedure followed in
the present case.

As shown by the evidence and as recognized in other
cases involving the validity of this statute, *Bowman* v.
*Virginia State Entomologist,* 128 Va. 351; *Kelleher* v.
*Schoene,* 14 Fed. (2d) 341, cedar rust is an infectious plant
disease in the form of a fungoid organism which is destruc-
tive of the fruit and foliage of the apple, but without
effect on the value of the cedar. Its life cycle has two
phases which are passed alternately as a growth on red
cedar and on apple trees. It is communicated by spores
from one to the other over a radius of at least two miles.
It appears not to be communicable between trees of the
same species but only from one species to the other, and
other plants seem not to be appreciably affected by it.
The only practicable method of controlling the disease
and protecting apple trees from its ravages is the destruc-

tion of all red cedar trees, subject to the infection, located within two miles of apple orchards.

The red cedar, aside from its ornamental use, has occasional use and value as lumber. It is indigenous to Virginia, is not cultivated or dealt in commercially on any substantial scale, and its value throughout the state is shown to be small as compared with that of the apple orchards of the state. Apple growing is one of the principal agricultural pursuits in Virginia. The apple is used there and exported in large quantities. Many millions of dollars are invested in the orchards, which furnish employment for a large portion of the population, and have induced the development of attendant railroad and cold storage facilities.

On the evidence we may accept the conclusion of the Supreme Court of Appeals that the state was under the necessity of making a choice between the preservation of one class of property and that of the other wherever both existed in dangerous proximity. It would have been none the less a choice if, instead of enacting the present statute, the state, by doing nothing, had permitted serious injury to the apple orchards within its borders to go on unchecked. When forced to such a choice the state does not exceed its constitutional powers by deciding upon the destruction of one class of property in order to save another which, in the judgment of the legislature, is of greater value to the public. It will not do to say that the case is merely one of a conflict of two private interests and that the misfortune of apple growers may not be shifted to cedar owners by ordering the destruction of their property; for it is obvious that there may be, and that here there is, a preponderant public concern in the preservation of the one interest over the other. Compare *Bacon* v. *Walker*, 204 U. S. 311; *Missouri, Kansas & Texas Ry.* v. *May*, 194 U. S. 267; *Chicago, Terre Haute & Southeastern Ry.* v. *Anderson*, 242 U. S. 283; *Perley* v. *North Carolina*, 249 U. S. 510. And where the public interest is involved

preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property. *Mugler* v. *Kansas,* 123 U. S. 623; *Hadacheck* v. *Los Angeles,* 239 U. S. 394; *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Northwestern Laundry* v. *Des Moines,* 239 U. S. 486; *Lawton* v. *Steele,* 152 U. S. 133; *Sligh* v. *Kirkwood,* 237 U. S. 52; *Reinman* v. *Little Rock,* 237 U. S. 171.

We need not weigh with nicety the question whether the infected cedars constitute a nuisance according to the common law; or whether they may be so declared by statute. See *Hadacheck* v. *Los Angeles, supra,* 411. For where, as here, the choice is unavoidable, we cannot say that its exercise, controlled by considerations of social policy which are not unreasonable, involves any denial of due process. The injury to property here is no more serious, nor the public interest less, than in *Hadacheck* v. *Los Angeles, supra; Northwestern Laundry* v. *Des Moines, supra; Reinman* v. *Little Rock, supra,* or *Sligh* v. *Kirkwood, supra.*

The statute is not, as plaintiffs in error argue, subject to the vice which invalidated the ordinance considered by this Court in *Eubank* v. *Richmond,* 226 U. S. 137. That ordinance directed the committee on streets of the city of Richmond to establish a building line, not less than five nor more than thirty feet from the street line whenever requested to do so by the owners of two-thirds of the property abutting on the street in question. No property owner might build beyond the line so established. Of this the Court said (p. 143), " It [the ordinance] leaves no discretion in the committee on streets as to whether the street [building, *semble*] line shall or shall not be established in a given case. The action of the committee is determined by two-thirds of the property owners. In

other words, part of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent."

The function of the property owners there is in no way comparable to that of the "ten or more reputable free-holders" in the Cedar Rust Act. They do not determine the action of the state entomologist. They merely request him to conduct an investigation. In him is vested the discretion to decide, after investigation, whether or not conditions are such that the other provisions of the statute shall be brought into action; and his determination is subject to judicial review. The property of plaintiffs in error is not subjected to the possibly arbitrary and irresponsible action of a group of private citizens.

The objection of plaintiffs in error to the vagueness of the statute is without weight. The state court has held it to be applicable and that is enough when, by the statute, no penalty can be incurred or disadvantage suffered in advance of the judicial ascertainment of its applicability. Compare *Connally* v. *General Construction Co.,* 269 U. S. 385.

*Affirmed.*