## Commonwealth v. Hawbaker

*Edmund C. Wingerd*, for Commonwealth.
*A. J. White Hutton* and *John A. Smarsh*, for defendant.

DAVISON, P. J., November 23, 1931.—The defendant was arrested for violation of section eighteen (a) of the Act of March 10, 1927, P. L. 27, and was adjudged guilty after a hearing before John G. Palmer, Esq., a justice of the peace, and on April 14, 1931, was sentenced to pay a fine of ten dollars, together with costs, and in default to be committed to the county jail for a period of five days.

A certiorari was issued out of this court to bring before us for review the record of said justice of the peace in said proceedings, and exceptions were duly filed to said record as follows:

"1. The Act of March 10, 1927, P. L. 27, is entitled:

"'An act relating to the protection of agriculture and horticulture from plant pests, and amending, revising, consolidating, and changing the law relating thereto; defining the powers and duties of the Department of Agriculture relating thereto; providing penalties, and repealing present laws.'

"Section two (c) of said act provides as follows:

"'The term "plant or plant product" shall mean any plant or portion thereof, whether living or dead.'

"The Act of May 8, 1929, P. L. 1681, is entitled:

"'An act to amend section eighteen of the act approved the tenth day of March, one thousand nine hundred and twenty-seven (Pamphlet Laws twenty-seven), . . . permitting certain payments to be made for plants required or caused to be destroyed."

"Section eighteen (c), as amended, provides as follows:

"'If, under the provisions of this section, the Secretary of Agriculture shall require or cause to be destroyed or removed any growing and living plant or plants of the common red cedar . . . or of the European barberry . . . or of cultivated currants and gooseberries . . . other than nursery stock,' etc.

"Said amendment of May 8, 1929, as above quoted, is unconstitutional and void for the reason that the title to the original Act of March 10, 1927, refers to plants as such, and the amending Act of May 8, 1929, although referring in the title to plants in the amended section eighteen (c), attempts to embody trees of the red cedar variety within the general designation of living plant or plants.

"2. The Act of 1927 and the amending Act of 1929 are unconstitutional and void, being contrary to article one, section one, of the Declaration of Rights of the Constitution of Pennsylvania, and, also, article one, section nine, of said Constitution and of the Fourteenth Amendment of the Constitution of the United States as depriving a citizen of his property without just compensation and without due process of law."

The matter was argued before the court fully by both sides on said exceptions, and the matter now before us is to pass upon them.

The Act of 1927, supra, is entitled: "An act relating to the protection of agriculture and horticulture from plant pests and amending, revising, consolidating, and changing the law relating thereto; defining the powers and duties of the Department of Agriculture relating thereto; providing penalties, and repealing present laws."

Section two (c) of said act provides: "The term 'plant or plant product' shall mean any plant or portion thereof, whether living or dead."

By Act of Assembly approved May 8, 1929, P. L. 1681, which by its title is an act amending section eighteen of said Act of 1927, permitting payments to be made for plants required or caused to be destroyed, an additional clause (c) is added to said section eighteen, reading as follows: "If, under the provisions of this section, the Secretary of Agriculture shall require or cause to be destroyed or removed any growing and living plant or plants of the common red cedar (Juniperus virginiana), or of the European barberry (Berberis vulgaris), or of cultivated currants and gooseberries (Ribes species), other than nursery stock, upon any land the grower of which was in no way responsible for the existence of the condition which, in the opinion of the Secretary of Agriculture or his representatives, necessitated such destruction or removal, the Secretary of Agriculture shall, upon claim duly filed and approved by him, pay to such grower, or other person entitled thereto, compensation for such plants so required or caused to be removed or destroyed, in an amount not in excess of seventy per cent. of the value of the plants so required or caused to be removed or destroyed, as determined by the Secretary of Agriculture."

It is urged on us on behalf of the defendant that this amendment is unconstitutional because the title to the original act, that of 1927, refers to plants as such, and the amending act includes the common red cedar under its provisions, thus including trees under the designation of plants, and thereby

extending the purpose of the original act to the red cedar, which is a species of tree, without sufficient notice in the title of the act.

This brings us to the question of what is meant by the title of the Act of 1927 when it states that it relates to the protection of agriculture and horticulture from plant pests, that is, what is included under the term "plant."

In determining the meaning of a word used in a statute, the court is warranted in considering the scope and purpose of the act, its history, other statutes in pari materia, and judicial construction of similar statutes in other jurisdictions: Lipstein v. Provident Loan Society of New York, 139 N. Y. Supp. 799. In construing the word plant as used in the act in question, we, therefore, may consider its scope and purpose as shown from its context and from its title. That we may consider the title of the act in this connection is set forth in Endlich on Interpretation of Statutes, section 58, page 74, where the learned author says: "In this country, whilst the title of a statute is not, in general, regarded as a part of the same, it is nevertheless regarded as a legitimate aid in ascertaining the intention of the legislature when the language and provisions in the body of the act are ambiguous and of doubtful meaning and application."

The title of the Act of 1927 is, in part, "relating to the protection of agriculture and horticulture from plant pests."

Agriculture is defined by Webster's Dictionary to be the "art or science of cultivating the ground, including harvesting crops and rearing and managing live stock."

Horticulture is defined: "The cultivation of a garden, or orchard, the science and art of growing fruits, vegetables and flowers or ornamental plants."

From these definitions we see that orchards and fruits were part of that intended to be protected from plant pests, and this assists us in determining what the legislature had in mind in using the term plant pests. Was it used merely to draw a distinction between plants and shrubs or trees and other things of that nature, or was it intended in a broader sense to differentiate between plant organism or life and animal organism or life? If the former, it would not, perhaps, include a cedar tree; if the latter, it would include it. To assist in determining this, we must look at the purpose of the act and to such authorities as will assist us to that end.

In Webster's International Dictionary, 1930 edition, under the word plant, we find this definition: "Any member of the group of living organisms exhibiting irritability in response to stimuli, though generally without voluntary motion or true sense of perception; a vegetable in the broad sense as distinguished from an animal."

The definition of a tree is "a woody perennial plant having a single main axis or stem (trunk) commonly exceeding ten feet in height and usually devoid of branches below, but bearing a head of branches and foliage or a crown of leaves at the summit. There is no exact line of demarcation between trees and shrubs, and many plants are capable of assuming either habit."

When we consider the purpose of the act, to protect from plant pests, and then remember what was to be protected, that is, the things raised by agriculture and horticulture, which not only included such things as we refer to commonly as "plants," but, evidently, those things included under the head of horticulture, which embraces trees and fruits, we must conclude that, in its sense as used here, plants was used as distinguishing the plant or vegetable kingdom from the animal kingdom, and not to distinguish plants from trees, shrubs and other growing things, and that, therefore, this term would embrace red cedar trees, and the title to the Act of 1927 is sufficient to cover

the amendment of 1929, and that act is not unconstitutional because of this reason.

The second reason advanced by the defendant why said act is unconstitutional is that it violates the Bill of Rights of the Constitution of Pennsylvania, and, also, the Fourteenth Amendment to the Constitution of the United States, in that it acts to deprive persons of their property without due process of law. A statute similar in its terms and provisions to the one now under discussion was enacted in Virginia, and it was attacked as to its constitutionality on the same grounds as are urged here, together with other grounds, but was upheld and declared constitutional by the courts of both that state and of the United States, and the finding affirmed by the United States Supreme Court, and we are satisfied from reading the opinions in those cases·that this act does not contravene the Fourteenth Amendment of the Constitution of the United States, nor does it violate the Bill of Rights of the Constitution of Pennsylvania. In the Virginia cases below cited the courts discuss the constitutional question exhaustively, and the various opinions fully support the conclusions reached. It would be idle for us to quote extensively from these opinions in this opinion, as it would add nothing to what we are deciding, as a reference to them is just as satisfactory. In Miller v. Schoene, 276 U. S. 272, however, Mr. Justice Stone states the conclusions of the court so satisfactorily that we quote from his opinion: "On the evidence we may accept the conclusion of the Supreme Court of Appeals that the state was under the necessity of making a choice between the preservation of one class of property and that of the other, wherever both existed in dangerous proximity. It would have been none the less a choice if, instead of enacting the present statute, the state, by doing nothing, had permitted serious injury to the apple orchards within its borders to go on unchecked. When forced to such a choice the state does not exceed its constitutional powers by deciding upon the destruction of one class of property in order to save another, which, in the judgment of the legislature, is of greater value to the public. It will not do to say that the case is merely one of a conflict of two private interests and that the misfortune of apple growers may not be shifted to cedar owners by ordering the destruction of their property; for it is obvious that there may be, and that here there is, a preponderant public concern in the preservation of the one interest over the other. . . . And where the public interest is involved, preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property. . . . We need not weigh with nicety the question whether the infected cedars constitute a nuisance according to the common law; or whether they may be so declared by statute. . . . For where, as here, the choice is unavoidable, we cannot say that its exercise, controlled by considerations of social policy which are not unreasonable, involves any denial of due process."

See Bowman v. Virginia State Entomologist, 128 Va. 351, 105 S. E. 141; Kelleher v. Schoene, 14 F. (2d) 341; Kelleher v. French 22 F. (2d) 341 (affirmed by the United States Supreme Court, 278 U. S. 563); Miller v. Schoene, 276 U. S. 272.

On the authority of the above cases and the satisfactory reasons set forth therein for the conclusions reached, we will hold the act in the instant matter constitutional.

Now, therefore, November 23, 1931, for the reasons set forth in the foregoing opinion, defendant's exceptions are dismissed, and the judgment of the justice of the peace affirmed.          From Albert Strite, Chambersburg, Pa.