## CIRCUIT COURT OF SHENANDOAH COUNTY

Orrin L. French et al.

v.

Town of Mt. Jackson

July 2, 1985

Case No. (Chancery) 2606

By JUDGE PERRY W. SARVER

Complainants herein referred to as "French" filed a bill of complaint for injunctive relief against Defendant, Town of Mt. Jackson, herein referred to as "Town."

Briefly, Town had given notice to French that French was not in compliance with the Town code as it applied to grass, weeds and foreign growth on the property of French in that said growth had reached a height of 12 inches. A notice, introduced in evidence, was given by Town dated July 12, 1984, said notice being executed by R. L. Hassler, Chief of Police, on behalf of Town and said notice recited that Town had previously requested, on July 2, 1984, that a second notice be sent to those who had not complied with the ordinance and Chief Hassler, by his letter of July 12, 1984, was giving French an additional 10 day notice. French then filed the bill of complaint requesting injunctive relief on July 26, 1984, and praying that the Town be enjoined from enforcing the ordinance for various reasons set forth in said bill of complaint.

Thereafter, and pursuant to leave of Court by decree entered, an amended bill of complaint was filed on August 1, 1984, seeking the same injunctive relief and requesting

that the Court declare said ordinance null and void and of no force and effect, and further praying for an award of reasonable costs and attorney's fees. Subsequently, and pursuant to Court decree, the parties filed written memoranda of authority and the Court heard the evidence *ore tenus* on September 19, 1984.

After consideration of all of the foregoing, it appears to the Court that the issues to be decided are as follows:

(1) Is § 11.1 of the Code of the Town of Mt. Jackson void and unenforceable because it is inconsistent with the Constitutions and laws of the United States and this State, as provided in § 1-13.17 of the Code of Virginia, because of the penalties provided for therein, both civil and criminal, but more particularly the criminal penalties? If the said § 11.1 of the Code of the Town of Mt. Jackson is inconsistent, may either or both of said sanctions be severed so as to save the remaining portions of said ordinance?

(2) Do §§ 3.1-22.28 and 3.1-22.29 of the Code of Virginia prohibit Town from making the provisions of Section 11.1 of the Town of Mt. Jackson Code applicable to and binding upon the farm operations of French?

*Evidentiary matters*: F. Douglas French, one of the Complainants, testified on behalf of the landowners. His testimony was that the total tract owned by French contained 140 acres and approximately 26 acres of this tract was now located in the Town of Mt. Jackson as a result of annexation proceedings. The acreage is used for general farming, that portion in the river bottom is used for crops such as hay and barley, and that portion located in the Town of Mt. Jackson is permanent pasture land. French grazes from 30 to 80 cattle on the pasturage and has a calf crop each year, therefore, the number varies depending on whether and when the cattle have been marketed. With regard to the pasture, Mr. French testified that they mow periodically and brush hog the weeds that the cattle do not consume. At the time of the notification by Town, they were in the process of mowing. Mr. French admitted that the mowing of the weeds or thistles, not consumed by the cattle during the pasturing process, was not a high priority item and the mowing would take place between more important jobs. On cross-examination, Mr. French further admitted that there were some thistles in excess of 12 inches in height.

The property was zoned commercial by request of French and the property is now being advertised for commercial purposes, though farming operations are still taking place on the property. Insofar as a sale is concerned, it was Mr. French's position that the highest and best price for the property would be a sale for commercial purposes and it was zoned for that reason. He further felt that if it had been zoned residential it would be more difficult to have it rezoned commercial. Mr. French last stated that he presently owns 2,000 acres, either by himself or in partnership with the other Complainants, and the land in question is treated the same as all other portions of their farming operations.

French's next witness was Richard Bowman, a farm equipment dealer and also a farmer. Mr. Bowman testified that he was familiar with farming practices in Shenandoah County and that French's treatment of the pasture conformed to acceptable farming practices in Shenandoah County. On cross-examination, he testified that sometimes thistles are sprayed in the fall and dug up by hand in the summer. He stated that thistles were a weed, not cultivated and not a welcome weed. He stated further that animals will eat them on occasion and that spraying or digging the weeds out are acceptable practices.

Another witness, Guy Wetzel, a farmer in Shenandoah County who owns 325 acres and rents approximately 700 acres, is familiar with the land in question and also with agricultural practices in Shenandoah County. He stated that French's treatment of the pasture land conforms to accepted practices in Shenandoah County and he would rate the area in question among the top 30 percent of pasture land in Shenandoah County. He stated that, on occasion, cattle would eat the tops out of thistles when it was extremely dry. He stated that thistles are a weed and it was necessary to control them.

French's last witness was Joe B. Wightman, an employee of the Department of Agriculture, and a part-time farmer who farms approximately 1,000 acres in Shenandoah County. He stated that he was familiar with French's farm, which is the subject of this suit, and that the pasture was of a good quality. With regard to thistle control, he stated that the best way to control thistles was to keep the fertility of the land up. Thistles can also be sprayed. He ranked this particular tract of land in the top 25 percent of land in Shenandoah County. He further

stated that it was not financially feasible to keep this-tles below a height of 12 inches since this would also keep the grass in the pasture too low. He stated that it was the practice to spray and clip thistles when time and money permitted.

At the conclusion of French's testimony, Town called Rick Hassler, Chief of Police, to testify. Mr. Hassler identified his letter of July 12, 1984, directed to French. He stated that the letter dealt only with thistles since there was no other vegetation over 12 inches in this particular field.

Pictures were introduced in evidence showing various views of the pasture in question and they are designated as Complainants' and Defendant's Exhibits 3 A through 3 E, inclusive; Exhibits 4 A through 4 F, inclusive; Exhibits 5 A through 5 Z, inclusive; and Exhibit 5 AA.

It is the opinion of the Court that Town, in its enactment of § 11.1 of the Code of said Town was empowered to do so pursuant to the provisions of § 1-6 of its Charter granted by the General Assembly and by Code Sections 15.1-11, 15.1-14 and 15.1-867 of the Code of Virginia. However, the Court finds that subsections 11.1-3 and 11.1-7(c) of said § 11.1 of the Code of Town is contrary to and inconsistent with the Code of Virginia § 15.1-11, in that only a county may provide that a violation of an ordinance adopted pursuant to this § 15.1-11 can be declared a Class 4 misdemeanor and then only when said county adjoins a city whose population is in excess of 200,000. The provisions of § 11.1 of the Town Code must conform to the enabling legislation pursuant to the provisions of Section 1-13.17 of the Code of Virginia.

However, the Court finds that subsections 11.1-3 and 11.1-7(c) of the Town Code can be severed without violating those tests enunciated by the Supreme Court in *Board of Supervisors of James City County* v. *Rowe*, 216 Va. 128, 216 S.E.2d 199. As stated by the court in *Rowe* on page 214:

> Where a severability provision is included, a legislative act is presumed to be severable, the burden of proving non-severability is on the assailant of the legislation, and the presumption of severability must be overcome by considerations which establish the clear probability that the legislature would not have been

satisfied with what remains after elimination of the invalid parts. Whether there is or is not a severability provision, "the determination, in the end, is reached by applying the same test--namely, What was the intent of the lawmakers?" (Citations omitted.) While the presence of a severability provision "provides a rule of construction which may sometimes aid in determining [legislative] intent. . . it is an aid merely; not an inexorable command."

While Complainants have attacked the ordinance, stating that it is non-severable, no evidence has been introduced which would overcome the presumption of severability. There is no evidence whatsoever that the Town Council would not have been satisfied with what remains after elimination of that portion of the ordinance which provides for criminal punishment. There are ample provisions set forth for the enforcement of this ordinance and contained in subsections 11.1-7 and 11.1-8, and these provisions are consistent with Virginia law and will afford Town an adequate method in which to enforce the ordinance.

The Court does find that subsection 11.1-7, after deleting subparagraph (c), and subsection 11.1-8 are not in violation of either the 14th Amendment of the United States Constitution or Article 1, § 11, of the Constitution of Virginia.

Statutes requiring landowners to cut weeds on their property and even upon public land abutting their private property have been held to be constitutional. *See* 58 A.L.R. 217, *et seq.* In *Bowman* v. *Virginia State Entomologist*, 128 Va. 351, 105 S.E. 141, (a case appealed from the Circuit Court of Shenandoah County) the court held that a statute requiring a landowner to destroy cedar trees was a valid enactment in the exercise of the police power of the Commonwealth of Virginia. The provisions for the enforcement of this State statute were very similar in nature to Section 11.1 of the Mt. Jackson Town Code, and the Virginia Supreme Court held that this statute did not violate the 14th Amendment of the Federal Constitution nor did it violate § 11 of the State Constitution, in force at that time, and that notice provisions of said ordinance were sufficient to afford the property owner

due process. See also *Miller, et al.* v. *Schoene*, 276 U.S. 272, 72 L. Ed. 571.

Section 11.1-8 of the Town Code provides that the property owner must have a notice of 10 days before the Town can proceed to have the work done, and then if the property owner refuses to act, the Town can then perform the cutting and render a bill and the property owner has 30 days within which to pay the bill. If the property owner refuses to pay then the Town must proceed to collect such amount by securing a judgment. Accordingly, in the course of those proceedings, the property owner is given the right to his day in court.

The Court also refers Counsel to 3 Am. Jur. 2d, *Agriculture*, § 45 (Removal or destruction of noxious weeds) and 56 Am. Jur. 2d, *Municipal Corporations Etc.*, Section 466 (Vegetation and noxious weeds; crops within municipality) as additional authority that legislation of this type is a valid exercise of the police powers of state and local governments.

Accordingly, as to the first issue, § 11.1 of the Code of the Town of Mt. Jackson is a valid and enforceable ordinance after the severance of subsections 11.1-3 and 11.1-7(c).

With regard to the second issue, it is the opinion of the Court that § 11.1 is applicable to and binding upon the farm operations of French notwithstanding the provisions of §§ 3.1-22.28 and 3.1-22.29 of the Code of Virginia. However, in the enforcement of § 11.1, Town is subject to the provisions of §§ 3.1-22.28 and 3.1-22.29, and in particular subsections (A) and (D) of § 3.1-22.29. Pursuant to the provisions of subsection (A), French would not be protected in those instances whenever a nuisance results from the negligent or improper operation of any such agricultural operation or its appurtenances or when there has been a significant change in the operation itself.

There was no showing by the Town that French's operation, during the time in question in 1984, was such as to remove French from the protection of Chapter 4.5 of Title 3.1 of the Code of Virginia. To the contrary, and as noted in the evidentiary findings of this opinion, witnesses for French testified that its operations were consistent with good farming practices and that the pasture land in question, and the subject of these proceedings was high quality pasture land rated in the top 25 to

30 percent of pasture land in Shenandoah County and that good farming practices were being followed. This testimony was uncontradicted. Accordingly, in order for the Town to enforce this ordinance against French, or any other owner of land engaged in agricultural operations, there must be a showing of a nuisance resulting from negligent or improper agricultural operations. However, Town offered no testimony whatsoever in this regard, only that there were weeds or thistles in excess of the height provided for in the ordinance and, therefore, the Town did not bear its burden of proof in this regard. Accordingly, the Court will enjoin Town from enforcing the ordinance as it relates to the operations of French in July, 1984; however, this injunctive relief shall not operate so as to bar Town from enforcing this ordinance in the event of any future violation which takes French out of the protection of Chapter 4.5 of Title 3.1.

There is one other matter that the Court has not addressed which properly applies to both issues and that is, whether or not the real estate of French is excluded from the operation of the Town ordinance because it is not vacant land as provided for in the Town ordinance and § 15.1-11 of the Code of Virginia. The Court has reviewed numerous definitions of vacant, both in 43A *Words and Phrases* and *Black's Law Dictionary,* Revised 4th ed. It is the opinion of the Court that the land of French is vacant land and that land can be vacant even though it is cultivated insofar as the operation of § 11.1 of the Town Code and Section 15.1-11 of the Code of Virginia is concerned.