**Frederick L. WRIGHT, III, et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 520–87C.**

United States Claims Court.

May 31, 1988.

Kenneth C. Sandoe, Myerstown, Pa., for plaintiffs.

Paul J. Ehlenbach, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action came before the court on defendant's motion to partially dismiss plaintiffs' complaint for failure to state valid claims within the jurisdiction of the court. In its motion defendant contended that plaintiffs' claims are governed exclusively by 21 U.S.C. § 134a and 9 C.F.R. § 81 and that all other causes of action are without this court's jurisdiction. Plaintiff responded that both 21 U.S.C. §§ 114a and 134a and their accompanying regulations are applicable. In addition, plaintiffs asserted claims under due process, equal protection and fifth amendment taking.

## FACTS

Plaintiffs, Frederick L. Wright, III, Marjorie Wright, Fred L. Wright, Inc., T/A Willow Hill Hatchery, Willow Hill Poultry Farms and Willow Hill Poultry, operated a poultry business located in Berks County, Pennsylvania. The operation included hatching and breeding operations and custom poultry processing. Distribution was national and international. The suit arises from the disposal of 4,500 of plaintiffs' chickens by the Animal & Plant Health Inspection Service of the United States Department of Agriculture.

In April 1983, there was an outbreak of highly pathogenic avian influenza[1] amongst poultry in Pennsylvania. In November of that year defendant quarantined the geographic area in which plaintiffs operated their business. On or about December 23, 1983, defendant implemented vari-

---

1. Highly pathogenic avian influenza is: [a] disease of poultry caused by any influenza virus Type A that results in not less than 75 percent mortality within 8 days in at least 8 healthy susceptible chickens, 4–8 weeks old, inoculated by the intramuscular, intravenous, or caudal airsac route with bacteria-free infectious allantoic or cell culture fluids and using standard laboratory operating procedures to assure specificity.
9 C.F.R. § 81.1.

ous other prohibitions and restrictions regulating the transportation of poultry and related articles out of and into the quarantine area. Part of plaintiffs' operation was at that time inside the zone and part was outside the zone. In February 1984, the quarantine zone was expanded to include plaintiffs' entire operation. On April 20, 1984, plaintiffs' poultry flock was tested and no presence of the avian influenza virus was found. A second examination of the flock indicated that plaintiffs' poultry eggs tested positive for the virus. On July 23, 1984, defendant informed plaintiffs that the destruction of plaintiffs' flock was necessary in an effort to eradicate the disease. Plaintiffs asserted that defendant, on July 31, 1984, averred that it was willing to discuss allowing plaintiffs to save a certain number of healthy birds of a rare blood line from destruction. However, on August 1, 1984, two federal marshalls, four state police officers and seventy five other federal employees entered plaintiffs' properties and slaughtered the entire flock.

Some weeks later, defendant, pursuant to 9 C.F.R. § 81.14, offered plaintiffs $33,025.44 as fair market value of the flock based upon defendant's appraisals which defendant had conducted on July 7, 1984 and August 1, 1984. A similar appraisal provision appears in 9 C.F.R. § 53.3. Plaintiffs rejected the offer of compensation as inadequate.

In April 1985, pursuant to an agreement of the parties, defendant cleaned and disinfected plaintiffs' property. The quarantine on plaintiffs' premises was lifted on May 20, 1985. Thereafter, plaintiffs filed two suits against the United States in the U.S. District Court for the Eastern District of Pennsylvania, pursuant to 21 U.S.C. §§ 114a and 134a, and 9 C.F.R. §§ 50, 51, 53, 54, 56 and 81, seeking compensation for destruction of its flock and damage to its property caused by defendant's efforts to clean and disinfect the property. The district court dismissed both suits for lack of jurisdiction and transferred them to this court. *Wright v. United States Dep't of Agric.*, No. 86–3171 (E.D.Pa. July 14, 1987) [available on WESTLAW, 1987 WL 13756].

## DISCUSSION

### *Statutory Claim*

Plaintiffs' complaint asserted that the Secretary of Agriculture's determination of the fair market value of plaintiffs' flock pursuant solely to 21 U.S.C. § 134a and 9 C.F.R. § 81 was arbitrary, capricious or an abuse of discretion. Plaintiffs cannot prevail on the merits unless this is proven. *Julius Goldman's Egg City v. United States*, 214 Ct.Cl. 345, 351, 556 F.2d 1096, 1099 (1977) (*Egg City I*). The motion currently before the court does not go to the merits but seeks to dismiss certain of plaintiffs' claims asserting that the court lacks jurisdiction. Plaintiffs contended that the Secretary's computation of compensation should be governed by 21 U.S.C. § 114a as well as section 134a, and their implementing regulations, 9 C.F.R. §§ 53 and 81. Defendant contended that review of the Secretary's computation of plaintiffs' claim should be limited to application of 21 U.S.C. § 134a and 9 C.F.R. § 81 only. Thus the dispositive issue is whether 21 U.S.C. § 114a and 9 C.F.R. § 53 should be considered together with 21 U.S.C. § 134a and 9 C.F.R. § 81 in reviewing the determination by the Secretary of fair market value of the destroyed poultry and the value of property damaged.

The parties' contentions arose because 21 U.S.C. § 114a and 9 C.F.R. § 53 address "the control and eradication of any communicable diseases of livestock or poultry" without expressly including avian influenza, while 21 U.S.C. § 134a and 9 C.F.R. § 81 expressly address avian influenza.

The starting point for the interpretation of a statute is in the statutory language itself. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). The avian influenza at issue is clearly within the language of both provisions, but the court is asked to decide whether one provision should be applied exclusive of the other contrary to the general rule that statutory provisions are to be construed not in isolation but together so as to produce a harmonious whole. *Philbrook v. Glodgett*, 421 U.S. 707, 713,

95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) (citing *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)); *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (citing *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1856)); *United Mine Workers v. Andrus,* 581 F.2d 888, 892 (D.C.Cir.1978), *cert. denied sub nom. Carbon Fuel Co. v. Andrus,* 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978); *Candelaria v. United States,* 5 Cl.Ct. 266, 272 (1984).

Plaintiffs asserted that 21 U.S.C. §§ 114a and 134a should be read in conjunction with one another. Section 114a of Title 21 of the United States Code authorizes the Secretary to "control and eradicate any communicable diseases of livestock or poultry ... including the payment of claims growing out of destruction of animals (including poultry), and of materials, affected by or exposed to any such disease." 21 U.S.C. § 114a (parenthetical in original). Similarly, 21 U.S.C. § 134a provides that the Secretary, "in order to guard against the introduction or dissemination of a communicable disease of livestock or poultry, may seize, quarantine, and dispose of, in any reasonable manner" diseased poultry. Furthermore, the Secretary is directed to "compensate the owner of any animal, carcass, product, or article destroyed pursuant to the provisions of this section." 21 U.S.C. § 134a(d).

The United States Court of Claims offered some guidance as to the interrelationship of 21 U.S.C. §§ 114a and 134a. In *Julius Goldman's Egg City v. United States,* 214 Ct.Cl. 345, 556 F.2d 1096 (1977) (*Egg City I*), the court's analysis combined the application of sections 114a and 134a. That court held:

> The case concerns a lesser-known but far-reaching federal authority. Congress has given the Secretary of Agriculture power to "control and eradicate any communicable diseases of livestock or poultry ... which in the opinion of the Secretary constitute an emergency and threaten the livestock industry of the country," and has also authorized "the payment [by the Secretary] of claims growing out of the destruction of animals (including poultry), and of materials, affected by or exposed to any such diseases, in accordance with such regulations as the Secretary may prescribe." 21 U.S.C. § 114a. This power is spelled out in more detail in 21 U.S.C. § 134a(a) and (b), including the right to seize, quarantine, and dispose of animals which are found to have been affected with or exposed to any such dangerous or communicable disease.

*Egg City I,* at 348, 556 F.2d at 1097.

Plaintiffs here asserted that the *Egg City I* rationale should apply in this case and that 9 C.F.R. § 53 still further elaborates factors for the Secretary to consider in the computation of fair market value pursuant to 21 U.S.C. §§ 114a and 134a and 9 C.F.R. § 81. The court notes that 9 C.F.R. § 53 was promulgated before 21 U.S.C. § 134a and 9 C.F.R. § 81. The court believes that the statutory authority under which section 81 was later promulgated included both 21 U.S.C. §§ 114a and 134a and that 9 C.F.R. § 53 sheds helpful light on the provisions considered as a whole. Section 53 appears to serve as a basis for the later section 81. Regulation 9 C.F.R. § 81.14 states that "[p]oultry, carcasses or parts thereof, eggs, products, or articles required to be destroyed ... shall be appraised.... The appraisal shall be the fair market value at the time of destruction...." It appears that under 9 C.F.R. § 53.3b the Secretary may have less discretion in determining the fair market value because it mandates consideration of more factors. It states that "[t]he appraisal of animals shall be based on the fair market value and shall be determined by the meat, egg production, dairy or breeding value of such animals. Animals may be appraised in groups providing they are the same species and type." Therefore, when the regulations are construed together, the Secretary is aided by additional factors when establishing fair market value of destroyed animals. Plaintiffs asserted that specialty birds involving rare and irreplaceable blood lines were slaughtered and that fair market compensation should include

breeder and progeny value. The court believes that it is not necessarily precluded from considering the whole statute for a proper fair market value determination because the quality and value of plaintiffs' rare birds may fall under the factors to be considered in 9 C.F.R. § 53. Therefore, there is a possibility that the Secretary's computation for fair market value was arbitrary, capricious or an abuse of discretion.

This construction is supported by *Julius Goldman's Egg City v. United States,* 697 F.2d 1051 (Fed.Cir.), *cert. denied,* 464 U.S. 814, 104 S.Ct. 68, 78 L.Ed.2d 83 (1983) (*Egg City II*). That court held:

> The appellant also contends that the sum of the two indemnities did not adequately compensate it for the fair market value of its destroyed flock. The statute provides that the Secretary "shall" compensate the owners of diseased animals, destroyed under the section; and that "[s]uch compensation shall be based upon the fair market value as determined by the Secretary, of any such animal ... at the time of the destruction thereof." 21 U.S.C. § 134a(d) (1970). The fair market value of chickens therefore "shall be determined by the ... egg production ... value of such animals." 9 C.F.R. § 53.3(b) (1975).

*Id.* at 1054.

*Egg City II* is cited for the proposition that 9 C.F.R. § 53 may properly be considered with the later enacted 21 U.S.C. § 134a, as plaintiffs here urge. Defendant's assertion is that the statutes and regulations are mutually exclusive because the language of section 134a confers the Secretary broad power to "seize, quarantine, and dispose" not conferred by section 114a's power to "control and eradicate." *Egg City II* does not support that assertion. The court agrees with defendant's statement in its reply brief that "whenever the Secretary acts pursuant to section 134a, he also acts pursuant to section 114a." The court notes that defendant also stated in a footnote that the converse would not be true.

Defendant also cited *Yancey v. United States,* 10 Cl.Ct. 311 (1986), to support its contention that sections 114a and 134a are incompatible. In *Yancey,* defendant quarantined plaintiffs' poultry business and did not permit plaintiff to ship turkeys or hatch eggs interstate despite test results indicating plaintiff's turkeys to be both healthy and unexposed to the avian virus. Plaintiff sold the flock for meat after deciding that keeping the flock alive was uneconomic. Plaintiff later sued for compensation. The court held that 21 U.S.C. § 134a was inapplicable for a claim of compensation because defendant failed to satisfy the requirements of either sections 134a(a) or 134a(b). The court held that 21 U.S.C. § 134a(a) did not apply because plaintiff's flock were not yet moving or moved in interstate commerce and had not been affected or exposed to the disease. The court also held 21 U.S.C. § 134a(b) not to apply because the Secretary had not declared an emergency, plaintiffs' stock was not affected or exposed, the stock was not ordered destroyed, and stock sold as meat is not a compensable disposal under the statutes. The court also found plaintiffs' claim not compensable under section 114a and section 53 based on nearly the same criteria; the stock was not contaminated by or exposed to the disease, the Secretary had not required the flock destroyed, and the flock was not destroyed for purposes of the regulatory payment program. *Yancey,* at 316.

There is no evidence in *Yancey* suggesting that the court believed 21 U.S.C. §§ 114a and 134a to be mutually exclusive as defendant here contended. To the contrary, *Yancey* considered both section 114a and 134a as possibly applicable in holding plaintiff's claim not compensable. In any event, *Yancey* is distinguishable on its facts. In the present case a state of emergency was declared in November of 1983 due to the outbreak of avian influenza. There was no emergency in *Yancey.* In this case, plaintiffs flock was determined by defendant to be infected with the avian virus and was ordered destroyed. Destruction was executed by defendant. In *Yancey,* plaintiff's flock was healthy and not required by defendant to be destroyed. Also, in *Yancey* the sale of the flock as

meat was not cognizable under section 114a or section 134a. Furthermore, there is no indication by the *Yancey* court that had plaintiff's flock been destroyed pursuant to an order by the Secretary that fair market value would not have included the considerations in section 53.3.

Defendant's partial motion to dismiss with respect to the applicability of both 21 U.S.C. § 114a and 9 C.F.R. § 53 is, therefore, denied.

■ Additionally, although this court's discussion addressed the compensation of plaintiffs destroyed flock, the court is of the opinion that it is possible that plaintiffs may also recover property damages pursuant to 21 U.S.C. §§ 114a and 134a and under a contractual theory arising out of the "Agreement" of March 28, 1985, due to defendants cleaning and disinfecting of plaintiffs property. Therefore, the motion to dismiss a claim for property damage is denied.

*Due Process and Equal Protection Claim*

■ Plaintiffs asserted that defendant violated their fifth and fourteenth amendment rights of due process and equal protection. These contentions are rejected because this court lacks jurisdiction over claims because they cannot be fairly interpreted to mandate money damages against the United States when violated. *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980); *Muehlen v. United States*, 209 Ct.Cl. 690, 690, 529 F.2d 533 (1976); *Morgan v. United States*, 12 Cl.Ct. 247, 253 (1987); *Bounds v. United States*, 1 Cl.Ct. 215, 216 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.1983). Since neither the due process clause nor the equal protection clause provide monetary relief, the court lacks jurisdiction over such claims.[2] *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1975); *Eastport Steamship v. United States*, 178 Ct.Cl. 599, 605–09, 372 F.2d 1002, 1007–10 (1967).

*Taking Claim*

■ Plaintiffs also asserted an unlawful fifth amendment taking for which just compensation is required. However, when acting under the state police power the destruction of diseased animals requires no compensation. *Cf. Miller v. Schoene*, 276 U.S. 272, 279–80, 48 S.Ct. 246, 247–48, 72 L.Ed. 568 (1928); *Loftin v. United States*, 6 Cl.Ct. 596, 612 (1984), *aff'd*, 765 F.2d 1117 (Fed.Cir.1985). The basic reasoning used by the courts in support of this exercise of police power without compensation is that such diseased animals are obnoxious to the public health. Where public interest is involved, preferment of that interest over the property interest of the individual, even to the extent of its destruction, is not unconstitutional. *Miller*, 276 U.S. at 279–80, 48 S.Ct. at 247–48; *Loftin*, at 611–12. This court agrees with the rationale in *Loftin* that "[t]he diseased animals in this case can reasonably be considered a public nuisance. It follows then that no compensation for the destruction of these animals was required. However, Congress acting under the commerce clause in passing essentially a police regulation saw fit to compensate owners...." *Loftin*, 6 Cl.Ct. at 612. Therefore, under the authority of *Miller* and *Loftin* and on the facts of this case, a fifth amendment taking claim does not lie.

### CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part. Plaintiffs' claims based upon lack of due process, equal protection and fifth amendment taking are dismissed as being outside of the jurisdiction of this court.

IT IS SO ORDERED.

---

**2.** This court has been characterized in the parties briefs as a court of "limited" jurisdiction. This is the "shorthand" method of describing the court's jurisdiction. Rather, the court is one of "specific" jurisdiction. While its jurisdiction is limited to money mandating provisions of law, regulations, contracts, etc., that jurisdiction is specified, with few exceptions, to lie solely within this court. It is more than a matter of semantics.